IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DANIEL L. RAGONESE,                          )
                                             )
                Plaintiff,                   )
                                             )
        v.                                   )        C.A. No. 20-cv-1636-RGA-MPT
                                             )
KILOLO KIJAKAZI, Acting                      )
Commission of Social Security,[1]            )                    FILED
                                             )
                Defendant.                   )            NOV 2 4 2021

### REPORT AND RECOMMENDATION
                                                    U.S. DISTRICT COURT DISTRICT OF DELAWARE

## I.    INTRODUCTION

        This action arises from the denial of Daniel L. Ragonese's ("plaintiff") claim for

Social Security benefits.  On November 6, 2017, plaintiff filed an application for

Supplemental Security Income ("SSI") under Title XVI of the Social Security Act (the

"Act").[2]  In his initial application and disability report, plaintiff alleged disability beginning

May 14, 1999 due to conditions including:  autism, depression, and Asperger's

syndrome.[3]  His claim was denied initially on June 22, 2018 and again upon

reconsideration on November 27, 2018.[4]  On December 14, 2018, the Administrative

Law Judge ("ALJ") received plaintiff's request for a hearing.[5]  A video hearing was held

---

        [1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9,
2021.  Pursuant to Rule 43(c)(2) of the Federal Rules of Appellate Procedure, Kilolo
Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit.
No further action need be taken to continue this suit by reason of the last sentence of
section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).
        [2] D.I. 10 (Transcript of Social Security Proceedings) at 201 (initial application).
        [3] Id.
        [4] Id. at 127 (initial denial); D.I. 10 at 139 (denial at reconsideration).
        [5] Id. at 143 (Request for Hearing by [ALJ] Summary).

on December 3, 2019.[6]  At the hearing, testimony was provided by plaintiff, who was

represented by counsel, vocational expert ("VE") Amanda R. Ortman ("Ortman"), and

Joseph Balinski ("Balinski"), the Kent County Coordinator for Autism Delaware.[7]  The

ALJ determined plaintiff did not qualify as "disabled" under section 1614(a)(3)(A) of the

Act and denied his request for benefits in a decision dated December 27, 2019.[8]

Following the ALJ's unfavorable decision, plaintiff filed a request for review, which the

Appeals Council denied on September 25, 2020.[9]  Plaintiff brought the instant civil

action in this court challenging the ALJ's decision on December 1, 2020.[10]

Presently before the court are the parties' cross motions for summary

judgment.[11]  For the following reasons, it is recommended that plaintiff's motion for

summary judgment be granted, and that defendant's motion for summary judgment be

denied.

## II.    BACKGROUND

Plaintiff was born on May 14, 1999.[12]  He completed high school and obtained

his diploma.[13]  Plaintiff held part-time employment at Chick-fil-A and at Dover Downs in

---

[6] *Id.* at 168 (notice of hearing).

[7] *Id.* at 43 (beginning of plaintiff's testimony); *id.* at 93 (beginning of VE's testimony); *id.* at 66 (beginning of Balinski's testimony).  Plaintiff's mother also provided testimony.  Neither plaintiff nor defendant's arguments center on her testimony.

[8] *Id.* at 34.

[9] *Id.* at 11.

[10] D.I. 1 (Complaint).

[11] D.I. 12 (plaintiff's motion for summary judgment); D.I. 14 (defendant's motion for summary judgment).  Briefing on the motions are found at D.I. 13 (plaintiff's opening brief); D.I. 15 (defendant's opening/answering brief); and D.I. 16 (plaintiff's answering/reply brief).

[12] D.I. 10 at 201.

[13] *Id.* at 48.

the Pit Stop break room.[14]  Each of these jobs was conducted in a sheltered work

environment[15] facilitated through Autism Delaware.[16]  The alleged onset of plaintiff's

disability was May 14, 1999, but he was diagnosed with autism and Asperger's

syndrome as a child.[17]  Plaintiff alleges his ability to work is limited by autism and

depression.[18]  He argues the ALJ's Residual Functioning Capacity ("RFC") finding is not

supported by substantial evidence because the ALJ failed to build an accurate and

logical bridge between the evidence of plaintiff's limited functioning in his sheltered work

environment and her RFC finding, and that the ALJ did not reasonably or logically reject

evidence of such.[19]  To be eligible for disability benefits, plaintiff must demonstrate he is

disabled under Title XVI of the Act, which has the same standard as discussed below.

## A.    Evidence Presented

Plaintiff presented extensive records regarding his history of autistic spectrum

disorder, Asperger's syndrome, and depression.[20]

According to plaintiff's Function Report, his ability to work is limited because he

is easily distracted and cannot work independently.[21]  The diagnosed mental

impairments result in plaintiff's inability to begin a task, or stay focused on the task to

---

[14] *Id.* at 49-50.
[15] "Sheltered employment is employment provided for handicapped individuals in a protected environment under an institutional program."  SSR 83-33(B)(2).
[16] Autism Delaware is a company which provided job placement, job development, and job coaching support for plaintiff.  The coaching support included on-site supervision and guidance.  D.I. 10 at 68.
[17] *Id.* at 25, 30, 106-07.
[18] *Id.* at 239.
[19] D.I. 13 at 10, 12.
[20] D.I. 10 at 31, 384.
[21] *Id.* at 251.

completion.[22]  This results in awkward social interactions and the need for constant prompting.[23]  He is able to care for his personal hygiene, but does not believe he needs to bathe more than once a week.[24]  Plaintiff usually travels with others due to anxiety and panic when overwhelmed.[25]

A 2018 clinical psychological evaluation found plaintiff to be a "reliable historian" because of the consistency between available records and background information he provided.[26]  He was able to count backwards from twenty and recite the alphabet with no errors and also perform serial threes to 40 without errors.[27]  Plaintiff reported playing video games and reading approximately seven hours per day.[28]  He was found to be cooperative, able to maintain eye contact, switch and change tasks without difficulty, and said he kept in touch with friends primarily through social media.[29]

In a letter from Amber Bower ("Bower"), a Direct Support Professional from Autism Delaware who supervised plaintiff for six months at Chick-fil-A, she opined plaintiff could not "hold a steady job position without support" and described a meeting with a director at the restaurant who said plaintiff did not seem "happy to be there" and noted the fast paced environment of the restaurant.[30]  She indicated an occasional need to verbally prompt plaintiff of his duties, and that he worked at a slower pace than

---

[22] *Id.*
[23] *Id.*
[24] *Id.* at 252.
[25] *Id.* at 376.
[26] *Id.* at 513.
[27] *Id.* at 509.
[28] *Id.*
[29] *Id.*
[30] *Id.* at 384.

what was required and avoided customer interaction.[31]

### B.    Hearing Testimony

#### 1.    Plaintiff's Testimony

At the December 3, 2019 administrative hearing, plaintiff testified to his background, work history, education, and alleged disability.[32]  Plaintiff completed his high school education and obtained his diploma.[33]  He enrolled in college, but his difficulty maintaining organization and failing to turn in assignments led to his failing core classes and dropping out.[34]

Plaintiff was employed at Chick-fil-A, where he worked with a job coach affiliated with Autism Delaware.[35]  He worked four hours per day for four days per week, but stamina problems resulted in fatigue after each shift.[36]  He was also easily distracted and had difficulties with spacial awareness.[37]  Plaintiff testified he was fired because he was not able to maintain the required pace and he did not smile enough.[38]  At the time of the hearing, plaintiff was employed at Dover Downs in the Pit Stop break room where he worked four days a week for four hours per day.[39]

Plaintiff explained that the issues he faced in his life related to his impairments included:  insomnia; difficulty completing jobs or tasks due to forgetfulness; being easily

---

[31] *Id.*
[32] *Id.* at 43-66.
[33] *Id.* at 48.
[34] *Id.* at 63-64.
[35] *Id.* at 55, 69.
[36] *Id.* at 59.
[37] *Id.* at 57.
[38] *Id.* at 55-56.
[39] *Id.* at 48, 52.

distracted; and working at a slow pace.[40]  He described the mental and physical fatigue

he experienced at the conclusion of his workdays and that it would be difficult for him to

work 40 hours per week.[41]  He recounted his struggle with anxiety and "worriedness"

and the resulting negative effects on his interpersonal relationships, ability to make

friends, be around others socially, and communicate at the workplace.[42]

Plaintiff testified his fear of being kidnaped by strangers impedes his ability to

travel in a car by himself.[43]  He has a driver's license, but utilizes paratransit for

transportation to and from work.[44]  He cited slow reaction time potentially impacting his

ability to safely operate a vehicle.[45]  Further, plaintiff did not believe he could handle

driving to any nearby grocery or drug stores because he feared the number of turns

increased the likelihood he would be involved in an accident.[46]

With regard to personal activities, plaintiff testified he enjoys playing video

games three or four hours a day[47] and that he mows his family's lawn in the summer.[48]

### 2.    Vocational Expert's Testimony

VE Ortman testified at the hearing and was asked by the ALJ to consider

multiple questions involving a hypothetical individual of plaintiff's age, education, and

work history.[49]

_____

[40] *Id.* at 56-57, 65.
[41] *Id.* at 59.
[42] *Id.* at 60, 63.
[43] *Id.* at 61-62.
[44] *Id.* at 54-55, 61.
[45] *Id.* at 62-63.
[46] *Id.* at 62.
[47] *Id.* at 64-65.
[48] *Id.* at 55.
[49] *Id.* at 94-96.

6

She was first asked if the hypothetical individual would be able to perform plaintiff's past work with the assumptions that the individual is able to perform light work, frequently climb ramps and stairs, occasionally climb ladders, ropes, and scaffolds; frequently balance, stoop, kneel, crouch, crawl; can tolerate no more than occasional exposure to extreme heat, extreme cold, humidity, wetness, fumes, odors, dusts, gases, poor ventilation, and vibration; cannot tolerate exposure to hazards, such as moving machinery and unprotected heights; can tolerate lights no brighter than a typical office setting level; is limited to no more than simple, routine, repetitive tasks; cannot work at a production pace, such as assembly line work; is limited to no more than simple work-related decisions, and can tolerate no more than a few changes in a routine work setting; can interact with supervisors and coworkers no more than frequently, but can work in tandem or directly with others no more than occasionally; and can interact with the public no more than occasionally.[50]

The VE testified the hypothetical individual would not be able to perform plaintiff's past work due to the restriction of "no more than occasional interaction with the public."[51]  The VE identified other jobs which such a hypothetical individual could perform, for example, a laundry folder, an electronics worker, and a shipping and receiving weigher.[52]

Next, the ALJ asked the VE to assume in the same hypothetical, that the individual is at the "sedentary exertional level."[53]  The VE testified that with this

---

[50] *Id.* at 94-95.
[51] *Id.* at 95.
[52] *Id.*
[53] *Id.* at 96.

7

assumption, there are be jobs available in the national economy for this hypothetical individual,[54] including a document preparer, a check weigher, and a final assembler optical.[55]

The ALJ then asked the VE if the hypothetical individual were not able to drive a motor vehicle for work related duties, whether that would impact her response regarding the jobs she had listed.[56]  The VE testified it would not have an impact.[57]

Finally, the ALJ asked if the hypothetical individual were able to "finger, handle, and reach no more than frequently, and that's bilaterally," would impact her response regarding the jobs she listed.[58]  The VE replied it would not have an impact.[59]

Plaintiff's attorney then specifically asked the VE "[i]f a hypothetical individual needed a job coach for more than 30 days, would they be considered capable of performing [a] job as a fast-food worker?"[60]  The VE testified that in her opinion, "they would not be able to perform *any* occupation in the national economy."[61]

### 3.    Balinski's Testimony

Balinski is a manager at Autism Delaware, the job placement and vocational program that worked with plaintiff.[62]  He has known plaintiff since plaintiff was sixteen,

---

[54] *Id.*
[55] *Id.*
[56] *Id.* at 97.
[57] *Id.*
[58] *Id.*
[59] *Id.*
[60] *Id.* at 100.
[61] *Id.* (emphasis added).
[62] *Id.* at 67.

or for approximately three years.[63]  Initially, he would meet with plaintiff weekly.[64]  At the time of the hearing, Balinski had been elevated to a management position and consulted with his job coaches and reviewed case notes on a monthly basis.[65]

Balinski testified plaintiff needs a job coach because he has "deficiencies with maintaining employment," stamina, and mental processing.[66]  Plaintiff required coaching for the nine or ten month duration of his job at Chick-fil-A.[67]  Balinski maintained, however, that was not unusual for most of his clients on the autism spectrum.[68]  Plaintiff received coaching regarding his interaction with customers, recognizing when something was dirty and needed to be cleaned, communication with his manager, and assessing what his designated tasks required and following through with them.[69]  When asked by the ALJ if plaintiff would be able to maintain employment Chick-fil-A without a job coach, Balinski replied "absolutely not."[70]  He opined that due to plaintiff's issues with stamina, he could not work an eight hour shift and would need constant coaching support.[71]

## C.    The ALJ's Finding of Facts and Conclusions of Law

Based on the medical evidence and testimony presented, the ALJ determined plaintiff as not disabled.  The ALJ's findings are summarized as follows:

---

[63] *Id.*
[64] *Id.* at 68.
[65] *Id.*
[66] *Id.* at 69.
[67] *Id.*
[68] *Id.* at 69-70.
[69] *Id.* at 70-71.
[70] *Id.* at 74.
[71] *Id.*

9

1.      The claimant has not engaged in substantial gainful activity since November 6, 2017, the application date (20 C.F.R. § 416.971 *et seq.*).[72]

2.      The claimant has the following severe impairments:  autism, depression, and Asperger's (20 C.F.R. § 416.920(c)).[73]

3.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926).[74]

4.      After careful consideration of the entire record, the [ALJ found] that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(c) except he can occasionally climb ladders, ropes, and scaffolds.  He can tolerate no exposure to hazards. He can tolerate lights no brighter than a typical office setting level and noise no louder than a typical office setting level.  He can perform simple, routine, repetitive tasks not at a production pace and can make simple work related decisions.  He can tolerate few changes in a routine work setting.  He can have frequent interaction with supervisors and coworkers, occasional interaction with the public, and can occasionally work in tandem.[75]

5.      The claimant has no past relevant work (20 C.F.R. § 416.965).[76]

6.      The claimant was born on May 14, 1999, and was 18 years old, which is defined as a younger individual age 18–49, on the date the application was filed (20 C.F.R. § 416.963).[77]

7.      The claimant has at least a high school education and is able to communicate in English (20 C.F.R. § 416.964).[78]

8.      Transferability of job skills is not an issue because the claimant does not have past relevant work (20 C.F.R. § 416.968).[79]

---

[72] *Id.* at 27.
[73] *Id.*
[74] *Id.*
[75] *Id.* at 29.
[76] *Id.* at 32.
[77] *Id.*
[78] *Id.*
[79] *Id.*

10

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 416.969 and 416.969(a)).[80]

10. The claimant has not been under a disability, as defined in the Social Security Act, since November 6, 2017, the date the application was filed (20 C.F.R. § 416.920(g)).[81]

The ALJ concluded that "[b]ased on the application for supplemental security income filed on November 6, 2017, [plaintiff] is not disabled under section 1614(a)(3)(A) of the Social Security Act."[82]

## III.   STANDARD OF REVIEW

### A.   Motion for Summary Judgment

In determining the appropriateness of summary judgment, the court must "review the record as a whole, 'draw[ing] all reasonable inferences in favor of the nonmoving party[,]' but [refraining from] weighing the evidence or making credibility determinations."[83]  If no genuine issue as to any material fact exists and the movant is entitled to judgment as a matter of law, summary judgment is appropriate.[84]

This standard does not change merely because there are cross-motions for summary judgment.[85]  Cross-motions for summary judgment:

> are no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily

---

[80] *Id.* at 33.

[81] *Id.*

[82] *Id.* at 34.

[83] *Reeves v. Sanderson Plumbing, Prods., Inc.*, 530 U.S. 133, 150 (2000).

[84] *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005) (citing FED. R. CIV. P. 56(c)).

[85] *Appelmans v. City of Philadelphia*, 826 F.2d 214, 216 (3d Cir. 1987).

11

justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.[86]

"The filing of cross-motions for summary judgment does not require the court to grant summary judgment for either party."[87]

## B.   Court's Review of the ALJ's Findings

Section 405(g) sets forth the standard of review of an ALJ's decision.  The court may reverse the Commissioner's final determination only if the ALJ did not apply the proper legal standards, or the record did not include substantial evidence to support the ALJ's decision.  The Commissioner's factual decisions remain if supported by substantial evidence.[88]  Substantial evidence means less than a preponderance of the evidence, but more than a mere scintilla of evidence.[89]  The United States Supreme Court has found substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[90]

In determining whether substantial evidence supports the Commissioner's findings, the court may not undertake a *de novo* review of the Commissioner's decision and may not re-weigh the evidence of record.[91]  The court's review remains limited to the evidence actually presented to the ALJ.[92]  The Third Circuit has explained:

---

[86] *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968).

[87] *Krupa v. New Castle County*, 732 F. Supp. 497, 505 (D. Del. 1990).

[88] 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986).

[89] *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005).

[90] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

[91] *Monsour*, 806 F.2d at 1190.

[92] *Matthews v. Apfel*, 239 F.3d 589, 593-95 (3d Cir. 2001).

a single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.  Nor is evidence substantial if it is overwhelmed by other evidence, particularly certain types of evidence (e.g., evidence offered by treating physicians) or if it really constitutes not evidence but mere conclusion.[93]

Thus, the inquiry is not whether the court would have made the same determination, but rather, whether the Commissioner's conclusion was reasonable.[94] Even if the court would have decided the case differently, it must defer to the ALJ and affirm the Commissioner's decision so long as that decision is supported by substantial evidence.[95]

Where "review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision."[96]  In *Securities & Exchange Commission v. Chenery Corp.*, the Supreme Court held:

a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency.  If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis.[97]

The Third Circuit has recognized the applicability of this finding in the Social Security disability context.[98]  Thus, this court's review is limited to the four corners of the

---

[93] *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983).
[94] *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).
[95] *Monsour*, 806 F.2d at 1190-91.
[96] *Hansford v. Astrue*, 805 F. Supp. 2d 140, 144-45 (W.D. Pa. 2011).
[97] 332 U.S. 194, 196 (1947).
[98] *Fargnoli v. Massanari*, 247 F.3d 34, 44 n.7 (3d Cir. 2001).

ALJ's decision.[99]

### C.    ALJ Disability Determination Standard

The Supplemental Security Income (SSI) program was enacted in 1972 to assist "individuals who have attained the age of 65 or are blind or disabled" by setting a minimum income level for qualified individuals.[100]  In order to establish SSI eligibility, a claimant bears the burden of proving that he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.[101]  Moreover, "the physical or mental impairment or impairments are of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in significant numbers in the national economy."[102]  Furthermore, a "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are evidenced by medically acceptable clinical and laboratory diagnostic techniques.[103]

### 1.    Five-Step Test

In determining whether a person is disabled, the Commissioner is required to

---

[99] *Cefalu v. Barnhart*, 387 F. Supp. 2d 486, 491 (W.D. Pa. 2005).
[100] *See Sullivan v. Zebley*, 493 U.S. 521, 524 (1990) (citing 42 U.S.C. § 1381 (1982 ed.)).
[101] 42 U.S.C. § 1382c(a)(3)(A).
[102] 42 U.S.C. § 1382c(a)(3)(B); *Barnhart v. Thomas,* 540 U.S. 20, 21-22 (2003).
[103] 42 U.S.C. § 1382c(a)(3)(D).

perform a five-step sequential analysis.[104]  If a finding of disability or non-disability can be made at any point in the sequential process, the Commissioner will not review the claim further.[105]  At the first step, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity.  If the claimant is so engaged, a finding of non-disabled is required.[106]  If the claimant is not, step two requires the Commissioner to determine whether the claimant is suffering from a severe impairment or a combination of impairments that is severe.  If the claimant is not suffering from either, a finding of non-disabled is required.[107]

If the claimant's impairments are severe, the Commissioner, at the third step, compares the claimant's impairments to a list of impairments (the "listings") that are presumed severe enough to preclude any gainful work.[108]  When a claimant's impairment or its equivalent matches an impairment in the listing, the claimant is presumed disabled.[109]  If a claimant's impairments, either singularly or in combination, fail to meet or medically equal any listing, the analysis continues to steps four and five.[110]  At step four, the Commissioner determines whether the claimant retains the RFC to perform his past relevant work.[111]  A claimant's RFC is "that which an individual is still able to do despite the limitations caused by [his] impairment(s)."[112]  "The claimant

---

[104] 20 C.F.R. § 416.920(a); *see also Plummer v. Apfel*, 186 F.3d 422, 427-28 (3d Cir. 1999).
[105] 20 C.F.R. § 416.920(a)(4).
[106] 20 C.F.R. § 416.920(a)(4)(i).
[107] 20 C.F.R. § 416.920(a)(4)(ii).
[108] 20 C.F.R. § 416.920(a)(4)(iii); *see also Plummer*, 186 F.3d at 428.
[109] 20 C.F.R. § 416.920(a)(4)(iii).
[110] 20 C.F.R. § 416.920(e).
[111] 20 C.F.R. § 416.920(a)(4)(iv); *see also Plummer*, 186 F.3d at 428.
[112] *Fargnoli*, 247 F.3d at 39-40.

bears the burden of demonstrating an inability to return to [his] past relevant work."[113]

If the claimant is unable to return to his past relevant work, step five requires the Commissioner to determine whether the claimant's impairments preclude him from adjusting to any other available work.[114]  At this last step, the burden rests with the Commissioner to show the claimant is capable of performing other available work existing in significant national numbers and consistent with the claimant's medical impairments, age, education, past work experience, and RFC before denying disability benefits.[115]  In making this determination, the ALJ must analyze the cumulative effect of all the claimant's impairments, and often seeks the assistance of a vocational expert.[116]

### 2.    Evaluation of Plaintiff's Subjective Complaints

The ALJ must consider all of the evidence in the record to evaluate the intensity and persistence of symptoms after the ALJ finds the claimant has an impairment that someone could reasonably expect to produce those symptoms.[117]  The ALJ considers a claimant's symptoms, including pain, and "the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record."[118]  Effective March 28, 2016, Social Security Ruling ("SSR") 16-3p superseded SSR 96-7p.[119]  SSR 96-7p required the ALJ to make a finding as to the credibility of a claimant to determine the weight the ALJ should afford to the claimant's

---

[113] *Plummer*, 186 F.3d at 428.
[114] 20 C.F.R. § 416.920(g) (mandating finding of non-disability when claimant can adjust to other work); *see also Plummer*, 186 F.3d at 428.
[115] 20 C.F.R. § 416.920(g).
[116] *See id.*
[117] *See* SSR 16-3p.
[118] *See id.*
[119] *See id.*

alleged symptoms.[120]  The Social Security Administration ("SSA") eliminated the use of the term "credibility" to avoid the potential misunderstanding that the subjective evaluation of a claimant's symptoms is an examination of an individual's character.[121] The SSA initiated SSR 16-3p to "clarify that subjective symptom evaluation is not an examination of an individual's character," but instead requires an ALJ to determine the weight given to a claimant's alleged symptoms based on the consistency of the alleged symptoms with the medical evidence of record.[122]  The ALJ must rely upon SSRs as precedents in adjudicating cases.[123]

Unlike the prior "credibility" determination under SSR 16-3p, a claimant's statements, reports from medical sources and other persons, and any other relevant information in the record provide the ALJ with an overview of the subjective complaints to be considered in evaluating the intensity, persistence, and limiting effects of an individual's symptoms.  The weight afforded a claimant's statements depends on the consistency with the medical evidence of record.  Where SSR 96-7p required the ALJ to look at consistencies and inconsistencies in the record to determine credibility, under SSR 16-3p, the ALJ reviews the claimant's statements to determine their consistency with the record medical evidence to decide the weight afforded the claimant's statement in making a disability determination.  SSR 16-3p states that the ALJ determine disability based on a claimant's statements about his symptoms along with evidence in the

---

[120] *See* SSR 96-7p.
[121] *See* SSR 16-3p.
[122] *See id.*
[123] *See* 20 C.F.R. § 402.35.

17

record relevant to the alleged impairments.[124]

In evaluating an individual's symptoms, the ALJ may "not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation."[125]  Instead, the ALJ must "focus on whether the record evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms . . . ."[126]  Based on an ALJ's evaluation of the record and a claimant's alleged symptoms, the ALJ must determine whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities.[127]

## IV.   DISCUSSION

### A.   Parties' Contentions

Plaintiff maintains the ALJ's determination of his RFC is not supported by substantial evidence.[128]  He argues the ALJ "failed to build an accurate and logical bridge between the evidence of [his] limited functioning in his sheltered work environment and her RFC finding[,]"[129] and that the "vocational evidence demonstrating [his] need for additional support and accommodations is outcome-determinative."[130]

Plaintiff argues the ALJ did not reasonably or logically reject the evidence of plaintiff's limited functioning in his sheltered work environment.[131]  Despite that

---

[124] *See* SSR 16-3p.
[125] *Id.*
[126] *Id.*
[127] *Id.*
[128] D.I. 13 at 10.
[129] *Id.*
[130] *Id.* at 11.
[131] *Id.* at 12.

evidence, the ALJ formulated an RFC that assumes he can independently, effectively, and on a sustained basis perform full-time work activity in a competitive job without additional support or supervision.[132]  He asserts the ALJ erroneously failed to consider evaluations by job coaches and support organizations that demonstrate his need for such support and accommodations.[133]

Defendant argues substantial evidence supports the ALJ's RFC assessment limiting plaintiff to simple, routine, repetitive tasks not at a production pace and with limited interpersonal interactions.[134]  Defendant contends the ALJ properly applied the new medical evidence regulations and was not *required* to discuss nonmedical source statements from plaintiff's vocational training sources,[135] although she *did* consider these statements in her RFC by limiting plaintiff to simple, routine, repetitive tasks not at a production pace.[136]  Further, defendant argues substantial evidence supports the ALJ's conclusion that plaintiff was not disabled, and that she was not required to

---

[132] *Id.* at 2.

[133] *Id.*

[134] D.I. 15 at 2, 9.

[135] Defendant's interpretation of 20 C.F.R. § 416.920c(d) implies the ALJ need not articulate how she considered evidence from a nonmedical source at all.  *See infra* at B(1) (discussing the change in the Rule).  Defendant's reliance on *Kyra H. v. Comm'r, Soc. Sec. Admin.*, No. 6:18-cv-01979-AC, 2020 WL 2216912, at *1 (D. Or. May 7, 2020), for that assertion is misleading.  Defendant, in his explanatory parenthetical of the case, states the *Kyra H.* court "[found] 'the ALJ is no longer required to provide reasons germane to lay witnesses to reject their testimony' because the new regulations provide the ALJ is not required to articulate how she considered evidence from nonmedical sources."  *See* D.I. 15 at 14 (citing *Kyra H.*, 2020 WL 2216912, at *19 n.8).  That statement was not a "finding" of the court:  it was merely dicta in a footnote.  Because the social security claims in *Kyra H.* were filed before March 27, 2017, the former standards were applicable to that court's analysis.  *See Kyra H.*, 2020 WL 2216912, at *1, *19.

[136] D.I. 15 at 2.

consider whether a reasonable accommodation was available in formulating the RFC.[137]

## B.   Appropriateness of the ALJ's Assessment

The ALJ determined plaintiff is not disabled under section 1614(a)(3)(A) of the Act.  The court must decide whether that determination was supported by "substantial evidence."[138]  If it was not, the court may reverse the Commissioner's final determination that plaintiff is not disabled under the Act, or remand for further proceedings by the ALJ.[139]

Plaintiff's overarching contention is that the ALJ's failure to build an "accurate and logical bridge between the evidence of Plaintiff's limited functioning in his sheltered work environment and her RFC finding" rendered the RFC unsupported by substantial evidence.[140]

### 1.   Evidence from Nonmedical Sources

Plaintiff contends the ALJ should have considered evaluations by job coaches and support organizations that demonstrate his need for such support and

---

[137] *Id.*

[138] *See supra* part III (B).

[139] *See supra* part III (B).

[140] D.I. 13 at 10.  In his answering/reply brief, plaintiff also submits the following issues raised in his opening brief were not disputed by defendant in its responsive brief: that plaintiff underwent a "sheltered work assessment"; that two job coaches with personal connections to plaintiff described his need for additional support; that SSR 11-2p expressly emphasizes the heightened probative value of evidence from sources such as job placement programs; and that the ALJ failed to address evidence provided by one of plaintiff's job coaches entirely and identified no specific inconsistencies in the other.  *See* D.I. 16 at 2.

SSR 11-2p consolidates information from SSA regulations on documenting and evaluating disability in young adults.  It also provides guidance on how the SSA applies policies when a young adult is determined disabled under the rules.  *See* SSR 11-2.

accommodations.[141]

For claims filed on or after March 27, 2017, such the instant action, the SSA revised the rules for evaluating medical evidence, as well as, redefining several key terms.[142] The rules in 20 C.F.R. § 416.920c apply to the evaluation of medical opinions and prior administrative determinations in cases filed on or after March 27, 2017, and differ from those applied prior to that date.[143] Under the prior rules, certain factors determined the particular evidentiary weight each medical opinion was accorded.[144] These factors could also be applied to nonmedical opinions.[145]

The new rules require an ALJ to focus on the persuasiveness of a medical opinion by applying certain factors,[146] which are no longer applied to nonmedical sources.[147] Specifically, the ALJ is not required to use the standards applicable to medical sources specified in paragraphs (a) through (c) of the regulation to articulate how she considered evidence from nonmedical sources.[148] Evidence from nonmedical sources is any information or statement(s) from a nonmedical source about any issue raised by a claimant.[149] Plaintiff argues the evidence provided by his two job coaches, Bower and Balinski, both nonmedical evidentiary sources, was "ignored and

---

[141] D.I. 13 at 2.
[142] Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132 (Mar. 27, 2017)).
[143] *Compare* 20 C.F.R. § 416.920c *with* 20 C.F.R. § 416.927.
[144] *See* 20 C.F.R. § 416.927(a)-(c).
[145] See 20 C.F.R. § 416.927(f).
[146] See 20 C.F.R. § 416.920c(a)-(c).
[147] See 20 C.F.R. § 416.920c(d).
[148] *See* 20 C.F.R. § 416.920c(d).
[149] 20 C.F.R. § 416.913(a)(4).

21

mischaracterized" by the ALJ.[150]

Plaintiff contends the ALJ failed to "give a germane reason to reject" Balinski's testimony.[151]  The Third Circuit precedent requires a reviewing court needs not only an expression of the evidence considered in support of the result, but also "some indication of the evidence that was rejected[,]" and absent such indication, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored."[152]  Courts in this circuit require that an ALJ considers and weighs all the nonmedical evidence, including lay witness testimony.[153]

The Ninth Circuit has similarly determined that lay witness testimony regarding a claimant's symptoms is competent evidence the ALJ must consider unless she "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so."[154]  The ALJ must give specific reasons for rejecting lay witness testimony.[155]  For example, an inconsistency with medical evidence is a germane reason for discrediting the testimony of a lay witness.[156]  However, the mere lack of support from medical records, is not a germane reason to discount lay witness testimony.[157]

Plaintiff contends Bower's opinion, set forth in a letter, was not addressed

---

[150] D.I. 13 at 12.

[151] *Id.* at 14.

[152] *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

[153] *See Jackson v. Saul*, No. 18-4374, 2019 WL 4058997, at *9 n.14 (E.D. Pa. Aug. 27, 2019) (citing *Burnett v. Commissioner of Soc. Sec. Admin.*, 220 F.3d 112, 122 (3d Cir. 2000)).

[154] *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

[155] *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006).

[156] *Bayliss v. Barnhart*, 427 F.3d 1211, 1219 (9th Cir. 2005).

[157] *Diedrich v. Berryhill*, 847 F.3d 634, 640 (9th Cir. 2017).

beyond a passing citation and was implicitly rejected by the ALJ.[158]  In her decision, the

ALJ did, however, incorporate Bower's opinion in her analysis of plaintiff's subjective

evaluation of symptoms.[159]  She also considered it in limiting plaintiff to work "not at a

production pace"[160] to accommodate his "slower pace."[161]  Bower's letter was not

rejected by the ALJ, but was included in her Decision alongside evidence from others

who worked with or treated plaintiff, cited similarly in passing.[162]  The ALJ did not reject

the evidence, and thus was not obliged to give reasons germane for doing so and,

therefore, her consideration of that letter was not erroneous.

Plaintiff separately contests the ALJ's finding Balinski's testimony unpersuasive.

The ALJ indicated Balinski's assessment of plaintiff's limitations was not consistent with

the record as a whole, or supported by the findings of medical professionals.[163]

Problematically, however, the ALJ did not specify *what* she determined to be

inconsistent between Balinski's testimony and other record evidence.

Although the rule for nonmedical testimony for claims filed after March 27, 2017

does not require the ALJ "to articulate *how* [she] consider evidence from nonmedical

sources" by using the same criteria for medical sources, the ALJ still must articulate her

consideration of lay witness statements and reasons for discounting those

statements.[164]  The court, therefore, determines the ALJ's failure to meaningfully

---

[158] D.I. 13 at 12-13.

[159] D.I. 10 at 31.

[160] *Id.* at 29.

[161] *Id.* at 384.

[162] *See id.* at 31.

[163] D.I. 10 at 32.

[164] *Joseph M. R. v. Comm'r, Soc. Sec.*, No. 3:18-cv-01779-BR, 2019 WL 4279027, at *12 (D. Or. Sept. 10, 2019) (emphasis added) (quoting 20 C.F.R.

address Balinski's testimony renders her decision unsupported by substantial evidence.

### 2.    The ALJ's RFC Finding

Plaintiff argues the ALJ's RFC is not supported by substantial evidence.  An RFC establishes the most an individual can do in a work setting despite impairments and limitations.[165]  In formulating a claimant's RFC, the ALJ must consider all of the claimant's impairments, including those that are not severe.  Although the ALJ may weigh the credibility of the evidence, she must give some indication of the evidence which she rejects and her reason(s) for discounting such evidence.[166]  The ALJ's RFC assessment must be based on all relevant evidence in the record, including plaintiff's evidence of his attempts to work, his need for a sheltered work environment, and work evaluations.[167]

The ALJ determined plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(b) except:

> [h]e can occasionally climb ladders, ropes, and scaffolds.  He can tolerate
> no exposure to hazards.  He can tolerate lights no brighter than a typical
> office setting level and noise no louder than a typical office setting level.
> He can perform simple, routine, repetitive tasks not at a production pace
> and can make simple work related decisions. He can tolerate few changes
> in a routine work setting.  He can have frequent interaction with
> supervisors and coworkers, occasional interaction with the public, and can
> occasionally work in tandem.[168]

This RFC does not take into consideration plaintiff's alleged demonstrated need for a sheltered work environment.  Neither the ALJ's RFC, nor her decision, accounts

---

§ 416.920c(d)).
[165] *See* 20 C.F.R. § 416.945(a)(1).
[166] *See Plummer*, 186 F.3d at 429.
[167] SSR 96-8p.
[168] D.I. 10 at 29.

24

for the VE's testimony that an individual needing a job coach for more than 30 days would be unable to perform *any* occupation in the national economy.[169]  The significance of the VE's testimony is that the record indicates plaintiff had exclusively been employed in sheltered work environments up to the date of his ALJ hearing. Thus, the court finds that the ALJ's RFC assessment did not properly apply the correct standards under the Agency regulations, therefore, the ALJ's decision is not supported by substantial evidence.

## V.    RECOMMENDED DISPOSITION

Consistent with the findings herein,

IT IS RECOMMENDED that:

1.  Plaintiff's motion (D.I. 12) be **GRANTED**, and this case is remanded to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further administrative proceedings to:  (1) articulate the inconsistency of Balinski's testimony with other record evidence; and (2) address the VE's testimony that an individual needing a job coach for more than 30 days would not be able to perform any occupation in the national economy; and

2.  Defendant's motion (D.I. 14) be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), FED. R. CIV. P. 72 (b), and D. DEL. LR 72.1, any objections to this Report and Recommendation shall be filed within fourteen (14) days from the date of this Recommendation and limited to ten (10) pages. Any response shall be limited to ten (10) pages and filed within fourteen (14) days

---

[169] *Id.* at 100.

thereafter.

The parties are directed to the Court's Standing Order in Non-Pro Se Matters for Objections Filed under FED. R. CIV. P. 72 dated October 9, 2013, a copy of which is found on the Court's website (www.ded.uscourts.gov.).

November 24, 2021                                    _____/s/  Mary Pat Thynge_____
                                                    CHIEF U.S. MAGISTRATE JUDGE